**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

S.B., BY AND THROUGH M.B. and S.B.

      Plaintiff,

v.                                        Case No. 24-1662
                                                  Jury Demanded

JEFFERSON PARISH SCHOOL BOARD,

      Defendant.

## **COMPLAINT**

1. This case involves physical abuse against a nonverbal, ten-year-old girl with autism.

2. Plaintiff, S.B., was slapped by not one, but two different teachers at her school, in violation of 42 U.S.C. § 12132. One of these teachers struck her on multiple occasions.

3. Relevant here, this Court dismissed, without prejudice, S.B.'s "reasonable accommodation" claim under the Americans with Disabilities Act, 42 U.S.C. § 12132, on grounds that she needed to first exhaust the claim with the LDAL under 20 U.S.C. § 1415(*l*).

4. S.B. explained that it would be "futile" to pursue an ADA claim with the Louisiana Department of Education, "for the simple fact that [administrative law judges] in Louisiana are not permitted to hear such claims." But this Court did not accept this argument.

5. The Fifth Circuit affirmed, dismissing the ADA reasonable-accommodation claims "without prejudice" to refile with the LDAL.

6. Just as S.B. predicted, the LDAL dismissed her ADA claims "for lack of subject matter jurisdiction."

7. S.B. has now fully exhausted her administrative remedies.

8. This action is timely, because it comes within "90 days from the date of the decision of the hearing officer." 20 U.S.C. § 1415(i)(2)(B).

## JURISDICTION AND VENUE

9.   This Court has jurisdiction over this action pursuant to 20 U.S.C. § 1415 and 42 U.S.C. § 12132.

10.  Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

11.  Plaintiff, a minor child, is a person with a disability and a resident of Louisiana.

12.  Plaintiff's mother, S.B., and Plaintiff's father, M.B., bring this action on their daughter's behalf.

13.  Plaintiff has a "disability," as defined by 42 U.S.C. 12102.

14.  Defendant Jefferson Parish School Board (JPSB) is the school board for Jefferson Parish, Louisiana, consistent with La. Rev. Stat. 17:51.  Its principal place of business is 501 Manhattan Blvd, Harvey, LA, 70058.

## FACTUAL ALLEGATIONS

15.  Walter Schneckenburger Elementary School is a public school in Jefferson Parish, operating under the jurisdiction of the Jefferson Parish Public School System.  It is located at 26 Earnest Ave, Kenner LA 70065.

16.  At all relevant times, Christi Rome was the Principal of Schneckenburger Elementary.

17.  At all relevant times, Plaintiff was a student at Schneckenburger Elementary.

18.  Plaintiff is now 14 years old.

19.  In February 2020, Plaintiff was 10 years old.

20.  In November 2020, Plaintiff was 11 years old.

21.  Plaintiff has autism, also known as autism spectrum disorder.

22.  Because of her autism, Plaintiff is nonverbal, meaning she cannot communicate with words.

23.  Autism is a "disability," because it substantially limits one or more major life activities.

24.  Louisiana law strictly forbids school officials from using corporal punishment against any "student with an exceptionality" or any "student who has been determined to be eligible for services under Section 504 of the Rehabilitation Act of 1973 and has an Individual Accommodation Plan."  La. Rev. Stat. § 17:416.1(B)(2).

25.  The Jefferson Parish School Board does not, and at all relevant times did not, provide adequate training to its employees on La. Rev. Stat. § 17:416.1(B)(2).

26.  Because of her autism, Plaintiff receives special education.

27.  Plaintiff's autism causes her to occasionally exhibit inappropriate behaviors, such as pinching and kicking.

28.  Lawyers with the Loyola Law Clinic represented Plaintiff and worked diligently to get school officials to agree to commonsense approaches to addressing such behavior, including redirecting her attention, giving her adequate space, speaking in a calm tone of voice, among many other approaches.

29.  Because of her autism, Plaintiff was shadowed at school by a special needs paraprofessional (SNP), which is a person charged with assisting teachers in making sure a child's education complies with the child's individualized education plan.

30.  The School Board contracts with a private company called Autism Spectrum Therapies to provide ABA therapy to children during school hours.[1]

---

[1] ABA stands for "applied behavioral analysis," a form of therapy for people with autism or similar disorders that can improve social, communication, and learning skills through positive reinforcement.

31.  The ABA therapists are not School Board employees; rather, the School Board permits the ABA therapists to work with autistic children in the classroom during the school day.

### *First incident of hitting: Janine Rowell*

32.  The School Board hired Janine Rowell in August 2019 to work as a special education teacher at Schneckenburger Elementary.

33.  Janine Rowell had never previously worked as a special-education teacher.

34.  Janine Rowell's only prior educational work experience was as an American Sign Language (ASL) interpreter.

35.  Janine Rowell had no special-education certification and no prior experience working with children with autism.

36.  Ms. Rowell harbors deeply held animus against children with autism and has told other school employees that she believes that they should all be in "institutions," not in schools.

37.  Despite lacking any special-education experience, Ms. Rowell was Plaintiff's special-education teacher for the 2019–2020 school year.

38.  From the outset, Ms. Rowell demonstrated little to no patience for Plaintiff and Plaintiff's special needs.

39.  Sometimes Ms. Rowell would scream at Plaintiff.  Other times, she would simply ignore Plaintiff and refuse to help Plaintiff with her schoolwork.

40.  Ms. Rowell spent most of her time staring at her phone rather than teaching Plaintiff.

41.  At around 1:30 pm on Friday, February 7, 2020, Plaintiff was in her classroom receiving therapy from an ABA behavioral technician.

42. Plaintiff was sitting on floor and refused to stand up to clean up puzzle pieces.  Her behavioral technician approached Plaintiff to help her up, but Plaintiff kicked towards her, though without making contact.

43. Ms. Rowell then began repeatedly and forcefully slapping Plaintiff's wrists, saying "No, ma'am! No kicking!"

44. The ABA behavioral technician witnessed the abuse.

45. Two SNPs in the room at the time also witnessed Ms. Rowell slapping Plaintiff's wrists, including Plaintiff's SNP.

46. Neither of the two SNPs reported the abuse to any school authorities.

47. The Louisiana Children's Code requires that school employees immediately report alleged or suspected child abuse and/or neglect to the Department of Children and Family Services (DCFS) or law enforcement as a mandated reporter.  La. Child. Code art. 609–10.

48. Principal Rome and these two SNPs are "mandatory reporters."  La. Child. Code art 609.

49. Later that afternoon, the ABA behavioral technician told her manager at Autism Spectrum Therapies about the incident.

50. Three days later, at 11:00 am on Monday, February 10, 2020, the manager from Autism Spectrum Therapies emailed Christi Rome.  The email recounted the events of the previous Friday as described by the behavioral technician.

51. Upon receiving this email, Principal Rome requested statements from all the adults in the room at the time, including the ABA behavioral technician, the two SNPs in the classroom at the time, and Ms. Rowell herself.

52.  Contrary to School Board guidelines, Principal Rome did not remove Ms. Rowell from the classroom.  As a result, Ms. Rowell remained in the classroom with Plaintiff for the remainder of the school day.

53.  At around 1:00 pm that day, Autism Spectrum Therapies sent Principal Rome a formal incident report.

54.  Plaintiff's mother did not learn of the incident until around 2:00 pm on Monday, February 10, 2020, after the manager from Autism Spectrum Therapies emailed her about it.

55.  After receiving the email from Autism Spectrum Therapies, Plaintiff's mother called the police and drove to the school, where she arrived around 3:00 pm.

56.  Around the same time, an officer from the Kenner Police Department arrived at the school.

57.  Plaintiff's mother requested a police report.

58.  In response, Principal Rome expressed irritation at the request and said, "That's not necessary."

59.  Plaintiff's mother replied, "It's my right to have a police report filed."

60.  Plaintiff asked Principal Rome why she hadn't called the police right away after learning of the incident.

61.  Principal Rome responded that she had not yet had time to perform an internal investigation into the allegation, even though the Louisiana Children's Code does not authorize mandatory reporters to conduct their own "internal" investigations before notifying authorities when they have reason to suspect abuse occurred.

62.  The officer did not interview Ms. Rowell, because the School Board directed Ms. Rowell not to speak with the officer.

63.  Plaintiff's mother told the officer that she was not interested, at that time, in pressing criminal charges against Ms. Rowell.

64.  Later that day, Principal Rome received signed statements from all the adults in the room at the time, including the two SNPs in the classroom at the time and Ms. Rowell herself.

65.  One SNP, Gayle Brown, stated that she witnessed Ms. Rowell grab Plaintiff's wrists, and, after Plaintiff resisted, she witnessed Ms. Rowell slapping Plaintiff's wrists.

66.  In addition, Ms. Brown stated in her letter that she had also witnessed Ms. Rowell slapping Plaintiff's wrists in this same manner two weeks prior, though she had not reported the prior incident to school authorities.

67.  Ms. Rowell denied any wrongdoing or that she slapped Plaintiff's wrists.

68.  Another SNP named Ilene Jacobs said she witnessed Ms. Rowell grab Plaintiff's wrists and yell at her, but did not witness any slapping.

69.  After considering the statements, Christi Rome informed Human Resources that she believed that Ms. Rowell, did, in fact, slap S.B.

70.  However, when an official with Human Resources asked Principal Rome whether she was "recommending termination" for Ms. Rowell, Principal Rome wrote "This teacher is new to us this year and came as a regular education teacher.  She was growing in her knowledge as a teacher of autistic students and attended all special needs prof[essional] development offered. Perhaps a regular classroom is a better match for her."

71.  Despite the fact that the multiple witnesses reported Ms. Rowell slapping S.B., and despite the fact that the principal found those reports more credible than Ms. Rowell's denial, the School Board did not discipline Ms. Rowell in any way.

72.  Instead, Ms. Rowell was "involuntarily transferred" to another school in the district, J.C. Ellis, effective March 16, 2020.

73.  In its letter notifying Ms. Rowell of the transfer to J.C. Ellis, the School Board wrote that the allegation "cannot be confirmed by video evidence or witness statements," despite receiving multiple witness statements confirming the abuse.

74.  The letter continues that the transfer should occur because the School Board "has determined that there is a conflict at the school preventing a productive learning and working environment."

75.  Despite Principal Rome's recommendation that "[p]erhaps a *regular classroom* is a better match for" Ms. Rowell, the School Board assigned Rowell as a *special-education* teacher at J.C. Ellis.

76.  Ms. Rowell acted with deliberate indifference to Plaintiff's rights.

77.  Ms. Rowell knew, or reasonably should have known, that federal and state law prohibit slapping children with disabilities.

78.  Other parents were not informed of the events that had taken place or the reason for Ms. Rowell's removal.

79.  Rather, over a month after Ms. Rowell's removal, Principal Rome informed the parents that there was a "vacancy" in their children's classroom.

80.  For almost two months, there was no teacher in Plaintiff's classroom. As a result, Plaintiff and her classmates were taught only by SNPs, not teachers.

81.  Rather than address the root cause of school employees hitting disabled children, the School Board has a policy or practice of shifting teachers and SNPs around to different schools within the district, where those employees continuing engaging in the same conduct.

82.  In May 2021, Janine Rowell's position at J.C. Ellis was eliminated.

83.  In August 2022, Ms. Rowell was hired another school district, the St. Tammany Parish School District, this time as a special-needs paraprofessional.

84.  Predictably, Ms. Rowell abused disabled children in St. Tammany Parish, as well.

85.  In April 2023, Janine Rowell was arrested by the Mandeville Police Department and charged with battery of special-needs children in St. Tammany Parish.

86.  On April 5, 2023, the parents of two autistic children in St. Tammany Parish filed a suit alleging that Janine Rowell physically abused their children.

87.  In this suit, the parents alleged that Ms. Rowell called their children "feral children" and "terror twins," among other hurtful slurs directed at their disability.

88.  Rowell also refused to allow disabled children to play outside during recess forcing them to play in an unsafe maintenance building.  She likewise refused to allow them to eat lunch with non-disabled children in the cafeteria, forcing them to eat lunch in their classroom.

89.  That lawsuit was filed in this District and was assigned to the Honorable Judge Papillion. *See Jane Doe and John Doe v. St. Tammany Parish Sch. Bd.*, Case No. 23-1170.

90.  On September 19, 2023, Janine Rowell pleaded guilty to simple battery in connection with these incidents in the Twenty-Second Judicial District Court in St. Tammany Parish.

### Second incident of hitting: Lesley Nick

91.  The School Board hired Lesley Nick in 2013.

92.  Lesley Nick began working as an SNP at Schneckenburger Elementary in August 2020.

93.  Ms. Nick knew that one of S.B.'s behavioral issues was pinching.

94.  Ms. Nick also knew that, according to the agreement with S.B.'s lawyers with the Loyola Law Clinic, there were numerous ways to effectively address such behavior.

95.  On the morning of November 18, 2020, Plaintiff was working with her ABA therapist on spelling, and Ms. Nick was assisting Plaintiff in choosing the correct letters.

96.  At some point during the session, Plaintiff reached out and pinched Ms. Nick's neck.

97.  In response, Ms. Nick grabbed Plaintiff's hand and forcefully slapped the top of it, saying "We do not pinch our friends."

98.  The special education teacher assigned to Plaintiff's classroom that day witnessed Ms. Nick slapping Plaintiff's hand and immediately reported the incident to Principal Rome.

99.  Principal Rome called Plaintiff's mother after the second incident and removed Ms. Nick from the classroom.

100. Again, Principal Rome did not contact the police or DCFS.

101. Ms. Nick admitted to slapping S.B. and received an unpaid 3-day suspension.

102. The School Board then transferred Ms. Nick to another school.

103. Once again, neither Principal Rome nor the School Board informed parents—either at Schneckenburger or at Ms. Nick's new school—the reason for Ms. Nick's departure.

104. Ms. Nick knew, or reasonably should have known, that state and federal laws prohibit slapping children with disabilities.

***105. Failure to accommodate S.B.'s disabilities***

106. Neither Nick nor Rowell used any commonsense accommodations to address Plaintiff's behaviors.

107. Such commonsense tactics include, among other things, speaking in a calm and quiet tone of voice, using clear and concise language, providing S.B. with adequate personal space, or redirecting her attention with new activities.

108. Nick and Rowell knew, or should have known, that S.B.'s educational plan included such accommodations.

109. It was obvious to Nick and Rowell that Plaintiff needed such an accommodation.

110. The Louisiana legislature has codified this right to an accommodation in La. Rev. Stat. § 17:416.1(B)(2).  Whereas a school district may, as a matter of state law, use corporal punishment against non-disabled students, Section § 17:416.1(B)(2) expressly prohibits such contact against students with disabilities.

111. The School Board and/or its employees acted with professional bad faith or gross misjudgment.

112. Before Ms. Rowell became S.B.'s teacher, S.B.'s behavioral outbursts were far less common; after Ms. Rowell became her teacher, S.B.'s outbursts became more common, because Ms. Rowell was teaching S.B. that problems should be resolved with violence.

113. S.B.'s behavioral issues was further compounded after Ms. Nick hit her.

114. The School Board has inadequate policies and training with regard to employees' obligation not to physically hit children simply for engaging in disability-related behaviors that pose no meaningful threat to the employee.

115. At all relevant times, the School Board had inadequate policies and/or training for informing employees of their obligation not to use corporal punishment against students with disabilities.

116. At all relevant times, the School Board had a policy of transferring teachers who hit students to other schools, without notifying the parents of those children that the teacher was transferred because of hitting a student.

117. The School Board is vicariously liable for the wrongdoing of its employees.

***S.B.'s parents withdraw her from the Jefferson Parish school system and place her in a public charter school, where she has been receiving proper accommodations and thriving.***

118. Because of these events, S.B.'s parents withdrew her from the School Board's school system.

119. S.B.'s parents placed S.B. in a "charter" school in Jefferson Parish.

120. S.B. has attended the same charter school since she was 11 years old.

121. Since attending this charter school, none of S.B.'s teachers or SNPs have ever slapped her.

122. Because she is receiving proper accommodations at her charter school, S.B.'s behavioral outbursts have substantially subsided.

***Plaintiff exhausts administrative remedies***

123. Based on the acts of violence against her, S.B. timely filed suit in this Court on February 3, 2021.

124. In that federal lawsuit, S.B. asserted both federal-law and state-law claims.

125. All but one of S.B.'s claims were dismissed with prejudice by this Court.

126. The United States Court of Appeals for the Fifth Circuit upheld that dismissal, and it issued its mandate on July 5, 2023.

127. Relevant here, this Court denied S.B.'s "reasonable accommodation" claims under the Americans with Disabilities Act "without prejudice."

128. Likewise, the Fifth Circuit confirmed that the dismissal of the "reasonable accommodation" claim was "without prejudice" and that S.B. was free to re-file such claims after she exhausted administrative remedies with the LDAL.

129. S.B. had argued that exhausting an ADA would be "futile," because the administrative law judges in Louisiana are not authorized to hear such claims.

130. Unfortunately, both this Court and the Fifth Circuit did not accept this argument and ordered S.B. to administratively exhaust her reasonable-accommodation claims before returning to this Court.

131. On July 6, 2023, S.B. filed a due-process complaint with the LDAL and asserted the ADA claim.

132. On April 1, 2024—and just as S.B. predicted—the Administrative Law Judge dismissed the ADA claim "for lack of subject matter jurisdiction."

133. Consistent with 20 U.S.C. § 1415(i)(2)(B), the ALJ's order provided that S.B. had ninety days to seek review in this Court.

**S.B.'s claims are timely**

134. Because the ADA has no express limitations period to file suit, federal courts "borrow" the limitations from analogous state law.  *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011).

135. The limitations period for ADA claims in Louisiana is one year.  *Bailey v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 441 F. Supp. 3d 321, 339 (E.D. La. 2020).

136. Because S.B. filed her original lawsuit in this Court within one year of the alleged misconduct, her ADA claims were timely filed.

137. The timely filing of S.B.'s lawsuit in this Court "interrupted" the prescriptive period.  La. Civ. Code art. 3462.

138. Unlike tolling or suspension, the term "interruption" means that "the time that has run is not counted, and prescription commences to *run anew* from the last day of interruption."  *Taranto*

*v. Louisiana Citizens Prop. Ins. Corp.*, 2010-0105 (La. 3/15/11), 62 So. 3d 721, 727 (emphasis added).

139. Therefore, the limitations period for S.B.'s ADA claims began to "run anew" once the federal suit was no longer "pending."  La. Civ. Code art. 3462.

140. Once the Fifth Circuit issued its mandate on July 5, 2023, the ADA claims were no longer "pending" in this Court, and the prescriptive period began to "run anew," meaning that the deadline to re-file those claims is July 5, 2024.

141. S.B.'s claims are also timely under 20 U.S.C. § 1415(i)(2)(B), because they are being filed in this Court within "90 days from the date of the decision of the hearing officer."

## CLAIMS FOR RELIEF

142. The School Board violated the Americans with Disabilities Act, 42 U.S.C § 12132, because it failed, on multiple occasions, to provide a reasonable accommodation for S.B.'s disabilities.

143. The School Board and/or its employees knew that S.B. needed such accommodations.

144. S.B.'s need for the accommodations was obvious.

145. S.B. suffered damages as a result of the School Board's failure to provide a reasonable accommodation for her disability.

## PRAYER FOR RELIEF

146. S.B. seeks compensatory damages, expectation damages, nominal damages, and any other form of damages that may be available.

147. S.B. seeks all attorney's fees and costs associated with these claims.

148. S.B. seeks any other relief this Court deems just and proper.

## **REQUEST FOR JURY**

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which she is entitled.


Respectfully submitted,

June 28, 2024

*Chris Edmunds*
Chris Edmunds, Counsel for S.B.
LBSA: 37670
Chris Edmunds Law Office
4937 Hearst St., Suite 2F, Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com